# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CARTER, Minors.

UNPUBLISHED
February 12, 2015

No. 321896
St. Clair Circuit Court
Family Division
LC No. 13-000094-NA

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor children NC, GC, and SC pursuant to MCL 712A.19b(3)(g) (failure to provide proper care or custody), (3)(b)(*i*) (parent's act caused child or child's sibling to suffer physical injury or physical or sexual abuse), (3)(c)(*i*) (conditions that led to adjudication continue to exist), (3)(c)(*ii*) (other conditions exist, parent has received recommendations to rectify conditions, and conditions have not been rectified), and (3)(j) (reasonable likelihood that child will be harmed if returned to parent).[1] We affirm.

Respondent argues that the trial court clearly erred in finding that statutory grounds for termination of her parental rights were proven by clear and convincing evidence.[2]

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *Id*.

---

[1] The parental rights of the children's father were previously terminated and are not at issue in this appeal.

[2] "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

MCL 712A.19b(3)(b)(*i*) provides that a court may terminate parental rights if it finds that "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse" and "[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." In this case, the court ruled that this ground was proven by clear and convincing evidence after concluding that respondent physically abused NC at a supervised visitation on November 26, 2013.

The court's finding that respondent physically abused NC was supported by the evidence. Amy Sherrod, a Department of Human Services (DHS) supervisor, testified that she saw respondent "toss" NC into a wall and NC's counselor, Jennifer Heinz, testified that she saw respondent "push" NC into the wall. The court found that Sherrod and Heinz were "extremely credible" witnesses and "[w]e defer to the special ability of the trial court to judge the credibility of witnesses." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). Sherrod testified that she heard NC's head "slam into the wall" and that he "hit his head and then ended up on all fours." She also saw a bruise on NC's left temple afterward. NC's foster mother testified that he had a bruise on his temple, some scratches on his neck, and a bruise on his buttocks after the November 26, 2013 incident. Prior to tossing or pushing NC into the wall, respondent pinned NC between her body and a couch. It appeared that she was trying to prevent him from moving. Respondent also asked GC to sit or stand on NC's legs so he would stop kicking them.[3]

The evidence also supports the conclusion that there was a reasonable likelihood that NC or one of his siblings would suffer from injury or abuse in the foreseeable future if placed in respondent's home. First, this was not respondent's first incident of physical abuse of NC. In July 2012, respondent slapped NC, leaving a handprint. NC said that the slap made him fall to the floor. He would have been three years old at the time of this incident. A CPS investigation occurred and SC and GC were placed with relatives. Respondent was criminally charged and pleaded guilty to fourth-degree child abuse, MCL 750.136b(7). Second, both the July 2012 and November 2013 incidents occurred after respondent had received many services, including a parent mentor, individual counseling, parenting classes, and family counseling. Even after participating, or given the opportunity to participate, in these programs intended to improve respondent's parenting skills, respondent still caused her four-year old son physical injury. Further, respondent "tossed" or "pushed" NC into the wall, causing a bruise on his temple, during a supervised visitation, raising concerns regarding what respondent might do in an unsupervised environment.

Finally, although there was no evidence that respondent physically abused GC or SC, MCL 712A.19b(3)(b)(*i*) applies if "[t]he child *or a sibling of the child* has suffered physical injury or physical or sexual abuse." (Emphasis added). Further, "[e]vidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App at 266. A trial court may determine a respondent's potential risk to a child's siblings

---

[3] Michigan's Offender Tracking Information System indicates that respondent was convicted by jury of third-degree child abuse, MCL 750.136b(5), as a result of this incident.

by considering how the respondent treated the child. *Id*. Thus, the trial court did not clearly err in concluding that there is a reasonable likelihood that GC and SC would suffer physical injury or abuse in the foreseeable future if returned to respondent's care.

Accordingly, the trial court did not clearly err by finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*).

The court also terminated respondent's parental rights under MCL 712A.19b(3)(j), which provides that termination is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

The trial court did not clearly err in finding that this statutory ground was proven by clear and convincing evidence. As discussed above, there was evidence that respondent physically abused NC on November 26, 2013. There was also evidence of a previous incident of physical abuse, which led to a criminal conviction. These incidents both occurred after respondent received services through the DHS designed to help respondent improve her parenting skills, teach proper discipline, and prevent such incidents of physical abuse.

Although both incidents of abuse involved NC, again, "[e]vidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App at 266. In addition, a court may consider the risk of both physical and *emotional* harm when determining if termination is appropriate under MCL 712A.19b(3)(j). *Id.* at 268. There was ample evidence that GC and NC have already suffered emotional harm during and as a result of visits with respondent. GC's counselor opined that GC's aggression stemmed from the trauma she went through while living at home with respondent and thought it would be best to suspend parenting visits. GC's foster mother also testified that GC acted out more and was more unruly after visits with respondent. NC's foster mother testified that NC's behavior seemed to get worse after he visited with respondent. When there was a visit scheduled, NC would get angry and say that he did not want to go. He often said he hated respondent and greatly resisted getting in the car to attend visits. When NC learned that the visits stopped and he would not have to see his mom, he was much less angry. He obeyed the rules and listened better.

There is a reasonable likelihood that all three children would be emotionally harmed if returned to respondent. The evidence indicated that respondent was incapable of managing and appropriately disciplining her children. In addition to the physical abuse described above, respondent also said many things to NC that were emotionally damaging, particularly given his age. She told him she could "have him put away" and "shipped off to an institution." She asked NC why he was so mean and told his siblings that he was mean. Respondent told NC that he would sit in his room all day if they were at her house. These statements were made during a supervised visitation in the presence of respondent's other children.

Moreover, a parent's failure to comply with and benefit from her service plan is evidence that a child will be harmed if returned to the parent's home. *In re White*, 303 Mich App at 711. Respondent failed to complete individual counseling or parenting classes, did not obtain suitable housing or employment, and did not comply with the Professional Counseling Center's in-home

service program, which was designed to help with her parenting skills. In sum, respondent failed to demonstrate substantial, or even minimal, compliance with her case service plan.

Accordingly, the trial court did not clearly err by finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(j).[4]

Respondent next argues that the trial court failed to provide a factual basis for its ruling that termination was in the children's best interests. We disagree.

"[T]he preponderance of the evidence standard applies to the best-interests determination." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interest, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

At the beginning of its order, the trial court referred to the referee's findings of fact and conclusions of law when discussing the statutory grounds for termination. While it would have perhaps been prudent for the trial court to specifically reference and incorporate the referee's recommendation in its order, it is clear that the trial court referenced the referee's written opinion, which includes a separate heading titled "Best Interest Determination." In this case, the referee's recommendations provided a factual basis, supported by the evidence, for the trial court's ruling that termination was in the children's best interest and, accordingly, respondent is not entitled to relief on this basis.

Moreover, the record indicates that the trial court's ruling that termination was in the children's best interests was not clearly erroneous. NC's counselor opined that NC has no bond with respondent and there was evidence that NC's behavior worsened when he was around respondent; he became angry and anxious about visiting her. There was also testimony that GC had behavioral problems associated with visiting respondent. Her counselor opined that these issues stemmed from the trauma she went through while living at home with respondent. The DHS has been involved in the children's lives since each was born. They have been in and out of protective custody since birth and, at the time of the termination hearing, respondent did not have a home for the children to live in. She was not employed and did not have an income to support them. The children's need for permanency, stability, and finality supported terminating respondent's parental rights. The children are now placed together with a paternal aunt and there

---

[4] Having found that the trial court did not clearly err in finding statutory grounds to terminate respondent's parental rights on these two bases, we need not address its rulings regarding the other statutory grounds. *In re Ellis*, 294 Mich App at 32.

was testimony that their behaviors and dispositions have improved since ceasing visitation with respondent.  Therefore, the trial court did not clearly err in finding that termination was in the children's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro